| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-1 | |
| Harley J. Goldstein, Esq. (admitted *pro hac vice*)<br>Matthew E. McClintock, Esq. (admitted *pro hac vice*)<br>Goldstein & McClintock LLLP<br>111 W. Washington Street, Suite 1221<br>Chicago, IL 60602<br>Telephone: (312) 337-7700<br>Email: harleyg@restructuringshop.com<br>　　　　mattm@restructuringshop.com<br>*Lead Counsel for the Debtor-in-Possession*<br><br>　　　　　　--and--<br><br>Douglas T. Tabachnik, Esq.<br>Law Offices of Douglas T. Tabachnik, P.C.<br>63 West Main Street, Suite C<br>Freehold, NJ 07728<br>Telephone: (732) 780-2760<br>Email: dtabachnik@dttlaw.com<br>*Local Counsel for the Debtor-in-Possession* | Case No. 22-19381 (KCF)<br><br>Chapter: 11<br>(Subchapter V)<br><br>Hearing Date: May [_], 2023<br>Judge: Hon. Kathryn C. Ferguson |
| In re:<br><br>**HOBBY LOBBY MARINE LLC**,<br><br>　　　　　　　　　Debtor-in-Possession. | |

**SMALL BUSINESS DEBTOR HOBBY LOBBY MARINE LLC'S**
**PLAN OF LIQUIDATION**

This Plan of L i q u i d a t i o n (the "Plan") is presented to inform you of the manner in which Hobby Lobby Marine LLC (the "Debtor") plans to treat its debts and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY MAY [__], 2023.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [____], 2023. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

**Law Offices of Douglas T. Tabachnik, P.C.**
Douglas T. Tabachnik, Esq.
63 West Main Street, Suite C
Freehold, NJ 07728

A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR MAY [__], 2023.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

**GOLDSTEIN & MCCLINTOCK LLLP**

*/s/* Matthew E. McClintock
Harley J. Goldstein, Esq. (admitted *pro hac vice*)
Matthew E. McClintock, Esq. (admitted *pro hac vice*)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
Email: harleyg@restructuringshop.com
        mattm@restructuringshop.com

*Lead Counsel to the Debtor*

        *--and--*

Douglas T. Tabachnik, Esq.
Law Offices of Douglas T. Tabachnik, P.C.
63 West Main Street, Suite C
Freehold, NJ 07728
Telephone: (732) 780-2760
Email: dtabachnik@dttlaw.com

*Local Counsel to the Debtor*

# TABLE OF CONTENTS

Page

**SUMMARY OF THE PLAN AND DISTRIBUTION TO CREDITORS**.................1
**ARTICLE I BACKGROUND OF DEBTOR** ...............................................1
    1.1 Nature of the Debtor's Business ...................................................1
    1.2 History of Business Operations.....................................................2
    1.3 Filing of the Bankruptcy Case.......................................................2
    1.4 Legal Structure ad Ownership.......................................................2
    1.5 Debtor's Assets ...........................................................................2
    1.6 Debtor's Liabilities.......................................................................2
    1.7 Current and Historical Financial Conditions...................................2
    1.8 Events Leading to the Filing of the Bankruptcy Case.....................3
    1.9 Significant Events During the Bankruptcy Case..............................4
    1.10 Projected Recovery of Avoidable Transfers .................................5
**ARTICLE 2 THE PLAN** ...................................................................5
    2.1 Unclassified Claims .....................................................................5
        A. Administrative Expenses .......................................................5
    2.2 Classes of Claims and Equity Interests .........................................7
        A. Classes of Secured Claims....................................................7
        B. Classes of Priority Unsecured Claims.....................................8
        C. Class of General Unsecured Claims.......................................10
        D. Class of Equity Interest Holders...........................................11
    2.3 Estimated Number and Amount of Claims Objections.................12
    2.4 Treatment of Executory Contracts and Unexpired Leases...........12
    2.5 Means for Implementation of the Plan........................................12
    2.6 Payments ..................................................................................13
    2.7 Post Confirmation Management ..................................................13
    2.8 Tax Consequences of the Plan ...................................................13
    2.9 Projection in Support of Debtor's Ability to Make Payments
    Under the Proposed Plan...................................................................13
**ARTICLE 3 FEASIBILITY OF PLAN** ...................................................13
    3.1 Ability to Initially Fund Plan .....................................................14
    3.2 Ability to Make Future Plan Payments and Operate without Further
    Reorganization .................................................................................14
**ARTICLE 4 LIQUIDATION ANALYSIS** ...............................................14
**ARTICLE 5 DISCHARGE** .................................................................14
    5.1 Discharge..................................................................................14
**ARTICLE 6 GENERAL PROVISIONS** ..................................................15
    6.1 Title to Assets...........................................................................15
    6.2 Binding Effect ...........................................................................15
    6.3 Severability ..............................................................................15
    6.4 Retention of Jurisdiction by the Bankruptcy Court.....................15
    6.5 Captions....................................................................................16
    6.6 Modification of Plan ..................................................................16

6.7 Final Decree ................................................................................................ 16
**ARTICLE 7 ATTACHMENTS** .................................................................................. 16
**ARTICLE 8 FREQUENTLY ASKED QUESTIONS** ............................................. 16
**ARTICLE 9 DEFINITIONS** ...................................................................................... 18

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Debtor's Plan will accomplish the following: (1) payment in full of all allowed administrative expenses incurred during this bankruptcy case; (2) payment in full of all allowed priority claims of the United States Department of Treasury -- Internal Revenue Service and New Jersey Division of Taxation; (3) payment of allowed secured claims; (4) to the extent funds remain after payment of 1-4, a pro-rata distribution to creditors holding allowed general unsecured claims; and (5) to the extent funds remain after payment of 1-5, a pro-rata distribution to equity holders. The Debtor will fund the Plan from the proceeds of an auction sale pursuant to Section 1123 of the Bankruptcy Code. The foregoing distributions will be made in the following order: first, to the holders of allowed secured claims; second, to the holders of allowed administrative claims; third, to allowed priority tax claims; fourth, to the holders of allowed general unsecured claims; and fifth, to equity holders.

Other than with respect to payment of the Class 1 Claim of Hanover Bank, no distributions under the Plan will be made until after the Debtor has resolved any Disputed Claims by stipulation or Court order (at which point distributions will be made reasonably promptly thereafter). For the sake of clarity, the Debtor may initiate or continue prosecuting objections to Claims after the Effective Date.

If this Plan is deemed to be a consensual Plan under Subchapter V of Chapter 11 of the Bankruptcy Code, the Debtor will make distributions either directly or through its representative advisor to the respective creditors. Otherwise, the Debtor will remit funds to Holly S. Smith, the Subchapter V Trustee appointed in this case, who will make distributions to the respective creditors.

As demonstrated in the Plan, the distributions to be made to creditors will exceed what creditors would have received following liquidation under Chapter 7 of the Bankruptcy Code, and, therefore, the confirmation of the Plan is in the best interest of all creditors.

## ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.     Nature of the Debtor's Business.

The Debtor is a full-service marina and outboard motorboat dealer situated in Toms River, NJ, which includes a 5,300 square foot showroom, service garage, separate shop, and a one-bedroom apartment. The marina has a twenty (20) foot water depth, a travel lift, a floating boathouse, and docks, including eighty-four (84) boat slips accommodating boats up to forty (40) feet in length.

The Debtor is located at 1423 Bay Avenue, Tom's River, NJ 08753. Aside from co-managing members Thomas Tweer and Robert Tweer, the Debtor has two employees — a mechanic/service coordinator, employed full-time, and a bookkeeper, employed full-time. The Debtor's monthly payroll, including employer's share of taxes, is approximately $13,674. To the

1

best of my knowledge, as of the Petition Date, there are no outstanding wage and/or benefits obligations to any of the Debtor's employees.

The Debtor operates under a calendar year from January 1 to December 31. Under normal conditions, the Debtor generates gross revenues of approximately $1,547,000, comprised of revenue generated by, among other things: (i) labor, including from repair and maintenance of watercraft; (ii) sales of gasoline, engines, and other parts and accessories; and (iii) storage and slip rental and related fees.

### 1.2.    History of Business Operations of the Debtor

The Debtor was originally founded in 1961 as a complete hobby retail business started by Thomas Tweer, Sr. In 1963, the Debtor expanded its business to become a dealer for various outboard motorboat motors and accessories. Over the years, the Debtor won accolades among its suppliers, including, among other honors, Grady-White Silver Anchor Awards Grady- White Key Dealer Awards, Top 100 Grady White Dealer Awards, Yamaha Factory Certified Technicians and Master Technicians, New Jersey Clean Marina Award and Yamaha Outboards Silver Team Member. The Debtor is also a Marine Industry Certified Dealership.

### 1.3    Filing of the Debtor's Chapter 11 Case.

On November 28, 2022, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Trenton, New Jersey. The financial burden of this litigation and substantial tax and third-party obligations incurred and accruing as a result of the slowdowns occasioned by the circumstances described in paragraphs 1.7 and 1.8 necessitated the filing of this voluntary petition.

### 1.4.    Legal Structure and Ownership.

The Debtor is a New Jersey limited liability company.  The owners of the Debtor are Thomas G. Tweer and Robert L. Tweer.

### 1.5.    Debtor's Assets.

A list of the Debtor's Assets is attached hereto as **Exhibit A**.

### 1.6.    Debtor's Liabilities.

A list of the Debtor's Liabilities is attached hereto as **Exhibit B**.

### 1.7.    Current and Historical Financial Conditions.

The Debtor's primary lender and Secured Creditor is Hanover Bank, as successor by merger to Savoy Bank ("Hanover"), the holder of a first-priority mortgage (the "Mortgage") on real estate owned by the Debtor. As of July 12, 2021, Hanover claimed that it was owed $2,147,599.51, including three months of unpaid interest, late charges, and escrows. Upon

information and belief, the total amount claimed by Hanover as of the Petition Date (including interest, escrow amounts, and late fees claimed by Hanover) was approximately $2,425,741.94.

NJEDA has asserted a claim and lien on the business (non-real estate) assets of the Debtor. The claim is asserted in the amount of $1,246,732.63. The Debtor has informally objected to the claim of NJEDA and the existence and extent of the purported security interest.

The Debtor has sought the approval of Debtor-in-Possession financing in the amount of Fifty Thousand Dollars ($50,000). The amount due will bear interest in the amount of ten percent (10%). The lender, Louisa J. Kostiha, will be granted a secured lien in the Debtor's assets, subordinate to the liens of Hanover and NJEDA.

The Debtor incurred tax liabilities in the approximate amount of $132,639.25.

The potion of the NJEDA debt that is not secured remains an unsecured debt of the Debtor. The Debtor has an additional estimated aggregate unsecured debt of approximately $21,940.83. These obligations are generally owed to trade creditors and outstanding operating debts.

Existing cash and post-Petition cash flow, combined with the funds obtained by the Debtor during the Chapter 11 Case through the Debtor-in-Possession loan, have been adequate to maintain the Debtor's operations while it effectuates a restructuring. The proceeds from the sale of the Debtor's assets pursuant to section 1123 of the Bankruptcy Code will be used to pay Allowed Claims.

### 1.8.    **Events Leading to the Filing of the Bankruptcy Case.**

In 2012, Hurricane Sandy wreaked havoc upon the entire region of Tom's River, NJ, causing millions of dollars of damage to the waterfront properties, including the marina owned and operated by the Debtor. Although the Debtor took out an NJEDA Loan to repair and restore the marina and its facilities, profitability was impacted over the long term as a result.

In 2020, the Debtor began to encounter serious supply chain difficulties brought on by the COVID-19 pandemic, which severely impacted the ability of the Debtor to maintain its steady stream of sales and servicing of outboard motorboats. Over time, these supply chain issues caused the Debtor to experience a substantial cash flow crisis that critically affected the Debtor's ability to timely service the Mortgage and the NJEDA Loan. The resulting cash flow shortages also impacted the Debtor's ability to invest in further refinements and upgrades necessary to maintain, enhance, and realize the potential value of the Debtor's business.

All of the foregoing issues resulted in an ensuing liquidity crisis for the Debtor. Hanover declared a default in July 2021 and subsequently obtained a foreclosure judgment.

Efforts to resolve these issues out of court were not successful, and Hanover scheduled a sheriff's sale for November 29, 2022. The Debtor believed that allowing a sheriff's sale to proceed would have risked harming other creditors and would not have maximized value. The bankruptcy was filed to allow the Debtor to maximize value for all creditors by allowing the Debtor to continue

operations while it consummates either an internal restructuring or a sale of the business.

**1.9.     <u>Significant Events During the Bankruptcy Case.</u>**

- On November 28, 2023, the Debtor filed its voluntary petition under subchapter V, chapter 11, title 11, United States Code (the "Bankruptcy Code") (docket no.1).
- On November 29, 2023, Holly S. Miller, Esq. was appointed Subchapter V Trustee. (docket no. 15)
- On November 30, 2022, the Debtor filed a Motion to Use Cash Collateral. (docket no. 17)
- On November 30, 2022, the Debtor filed a Motion for Interim and Final Orders (i) Authorizing the Continued Use of Existing Cash Management System, Bank Accounts, and Business Forms; and (ii) Waiving Investment and Deposit Requirements. (docket no. 18)
- On December 7, 2022, the Court entered an Order Granting Motion to Use Cash Collateral (docket no. 45).
- On December 7, 2022, the Court entered an Order Granting Interim Use Authorizing the Continued Use of Existing Cash Management System, Bank Accounts, and Business Forms; and (ii) Waiving Investment and Deposit Requirements (docket no. 46).
- On December 29, 2022, the Court entered an Order Granting Application to retain the Law Offices of Douglas T. Tabachnik, P.C. as Local Counsel for the Debtor (docket no. 71).
- On December 29, 2022, the Court entered an Order Granting Application to retain Goldstein McClintock, LLLP as Lead Counsel for the Debtor (docket no. 72).
- On December 29, 2022, the Court entered an order granting the application for the retention of Alvino & Shechter, as accountants. (docket number 73).
- On January 3, 2023, the Debtor filed a Motion for Entry of an order Authorizing the Debtor to Procure and Maintain New Insurance and related relief. (docket number 79).
- On January 6, 2023, the Debtor filed a Motion to Assume a Contract with Yamaha (docket number 83).
- On January 13, 2023, the Court entered an order granting the Motion for Entry of an order Authorizing the Debtor to Procure and Maintain New Insurance and related relief. (docket number 92).
- On January 17, 2023, the Debtor filed a Motion for Authority to Obtain Credit under Section 364(b). (docket number 95).

4

- On January 26, 2023, the Trustee filed a Motion to Dismiss or Convert the Case (docket number 105).
- A meeting of Creditors was conducted on January 6, 2023.
- Following the filing of this Plan the Debtor will be filing a Motion to Approve Bidding Procedures to effectuate the sale of the Debtor's assets and an application to retain a broker (Auction Advisors) to market and sell the assets.

### 1.10. <u>Projected Recovery of Avoidable Transfers</u>

The Debtor has not yet completed its investigation with regard to pre-petition transactions. The Debtor anticipates completing its investigation by May 15, 2023.

If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer.

## ARTICLE 2
## <u>THE PLAN</u>

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for the purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable, or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in the amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1. <u>Unclassified Claims.</u>

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

5

### A.    Administrative Expenses

The Debtor must pay all Administrative Claims in full. If an Administrative Claim is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Claim, or in other words, "allow" the Administrative Claim. Any Administrative Claim that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan on the Effective Date or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Claim is disputed, payment will be made after the Administrative Claim is allowed by the Bankruptcy Court.

There are several types of Administrative Claims, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it had purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Claim.

3. Administrative Claims also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Claims and their proposed treatment under the Plan:

| Type | Estimated | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | [$_____] per month | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Estimated Administrative Claims of professionals:<br><br>Law Offices of Douglas Tabachnik, P.C.<br><br>Goldstein & McClintock, | <br><br><br>[$_____]<br><br>[$_____] | To be paid on the Effective Date or as agreed by the individual creditor, with professional fees subject to approval by the Bankruptcy Court, cumulatively estimated at time of confirmation to be Approximately [$_____] for purposes of this disclosure. In the event that agreement |

6

| | | |
|---|---|---|
| LLLP<br><br>Alvino & Shechter | [$_____] | is not reached with any individual creditor, then payment will be made in accordance with the provisions of 11 U.S.C. 1191 or within the five-year period of the Plan. |
| Gellert Scali Busenkell & Brown, LLC | [$_____] | |
| Auction Advisors (broker) | [$_____] | |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | Not Applicable |
| Clerk's Office fees | $0.00 | Not Applicable. |
| United States Trustee Fees | $0.00 | Not Applicable. |
| TOTAL | [$_____] | |

## 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan and the proposed treatment that they will receive under the Plan:

### A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

7

| Class | Description | Insider (Yes or No) | Impairment | Treatment |
|-------|-------------|---------------------|------------|-----------|
| 1 | Hanover Bank | No | Unimpaired | Proof of claim asserts $2,425,0741.94 as of the Petition Date. Allowed (undisputed) portion to be paid at the Closing from the proceeds of the sale of the Debtor's Assets. |
| 2 | NJEDA | No | Impaired | To the extent an Allowed Claim: To be paid up to the amount of the value of the Secured Claim on the Effective Date from the proceeds of the sale of the Debtor's Assets pursuant to section 1123 of the Bankruptcy Code, after the payment of the Class 1 Claim.  The remaining amount of any Allowed Claim for NJEDA will be treated as a Class 5 Unsecured Claim. |
| 3 | Louisa J. Kostiha | No | Impaired | To be paid up to the full amount of the Secured Claim on the Effective Date from the proceeds of the sale of the Debtor's Assets pursuant to section 1123 of the Bankruptcy Code, after the payment of Class 1 and Class 2 Claims. |

**B. Class of Priority Unsecured Claims.**

Certain Priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), (7),

8

and (8) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Dept of Treasury IRS Priority unsecured claim pursuant to Section 508(a)(7) Total amt of claims = $77,917.14 | Impaired | To be paid on the Effective Date from the proceeds of the sale of the Debtor's Assets pursuant to section 1123 of the Bankruptcy Code, after the payment of Class 1 Claims, Class 2 Claims, Class 3 Claims and administrative Claims. To the extent that there are not sufficient funds to pay all Class 4 Claims in full, each Class 4 claim will be paid its pro rata share of the funds available. |
| 4 | NJ Div. of Taxation Priority unsecured claim pursuant to Section 508(a)(7) Total amt of claims = $54,721.97 | Impaired | To be paid on the Effective Date from the proceeds of the sale of the Debtor's Assets pursuant to section 1123 of the Bankruptcy Code, after the payment of Class 1 Claims, Class 2 Claims, Class 3 Claims and administrative Claims. To the extent that there are not sufficient funds to pay all Class 4 Claims in full, each Class 4 claim will be paid its pro rata share of the funds available. |

### C.  Class of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  The following chart identifies the Plan's proposed treatment of Class 4, which contains general unsecured Claims against the Debtor:

| Class | Description | Amount | Impairment | Treatment |
|-------|-------------|--------|------------|-----------|
| 5 | TBD | TBD (depends on the deficiency of the NJEDA claim and the extent to which it becomes an Allowed Claim. | Impaired | To be paid the pro rata share of the remaining proceeds of the sale of the Debtor's Assets pursuant to section 1123 of the Bankruptcy Code, after the payment of Administrative Claims, Class 1 Claims, Class 2 Claims Class 3 Claims and Class 4 Claims, up to the full amount of each Class 4 Allowed Claim.  Payments will be made on the Effective Date, or in the event of a disputed claim, on the latter of the Effective Date and the date upon which the Debtor, in its business judgment, has decided not to pursue any further objection or dispute to the claim, has stipulated with the Creditor as to the amount of the Claim or has resolved any claim objections by further Court Order. |

### D.  Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally,  with respect to an individual who is a debtor, the Debtor is the Equity Interest holder. The following chart sets forth the Plan's proposed treatment of the class of Equity  Interest holders:

| Class # | Description | Stock | Impairment | Treatment |
|---|---|---|---|---|
| 6 | Tom Tweer | 50 % of Membership Interest | Unimpaired | To be paid the pro rata share of the remaining proceeds of the sale of the Debtor's Assets pursuant to section 1123 of the Bankruptcy Code, after the payment of Administrative Claims, Class 1 Class 2 Claims, Class 3 Claims Class 4 Claims and Class 5 Claims, to the extent that each class is paid in full. |
| 6 | Robert Tweer | 50 % of Membership Interest | Unimpaired | To be paid the pro rata share of the remaining proceeds of the sale of the Debtor's Assets pursuant to section 1123 of the Bankruptcy Code, after the payment of Administrative Claims, Class 1 Class 2 Claims, Class 3 Claims |

| | | | | Class 4 Claims and Class 5 Claims, to the extent that each class is paid in full. |
|---|---|---|---|---|

### 2.3.    <u>Estimated Number and Amount of Claims Objections.</u>

The Debtor may object to the amount or validity of any Claim within 90 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| TBD | TBD | TBD |

### 2.4.    <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where the significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which include its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

The Debtor is currently seeking approval of procedures for assuming or rejecting contracts and leases as part of the Bidding Procedures. Counterparties to contracts will receive notice of such process.

### 2.5.    <u>Means for Implementation of the Plan.</u>

On Confirmation of the Plan and pursuant to the motion to approve the bidding procedures for the sale of the Debtor's assets, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures, and equipment, will be sold pursuant to the bidding procedures approved by the Court, with the proceeds from said sale, along with any available cash of the Debtor to be used to pay all Allowed Claims as provided in the Plan. The Debtor expects to have sufficient cash following the Closing Date to make the payments required by the Plan on the Effective Date.

### 2.6.   Payments.

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Debtor or its representatives pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.7.   Post-Confirmation Management.

The Debtor's business and assets are expected to be sold to fund this Plan so there will be no post-Confirmation operations other than (a) the period between the Confirmation Date and the Closing and (b) subsequently effectuating distributions hereunder.

| Name | Position | Compensation |
|------|----------|--------------|
| Tom Tweer | Co-Managing Member | $52,000 annually |
| Robert Tweer | Co-Managing Member | $52,000 annually |

### 2.8.   Tax Consequences of the Plan.

The confirmation and execution of this Plan may have tax consequences to Holders of Claims and Equity Interests. The Plan Proponents do not offer an opinion as to any federal, state, local, or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of this Plan. All Holders of Claims and Equity Interests are urged to consult their own tax advisors with respect to the federal, state, local, and foreign tax consequences of this Plan. This Plan is not intended, and should not be construed, as legal or tax advice to any Creditor, Equity Interest Holder, or other parties in interest.

### 2.9. Projections in Support of Debtor's Ability to Make Payments Under the Plan

The Debtor will not be making payments over time to creditors. Rather, it will be distributing the proceeds of the sale of its assets to creditors in the order set forth above. The amount of those distributions will depend on the total amount of proceeds generated by the sale.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1.** **Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will either have enough cash on hand on the Effective Date (again, largely as a result of the sale of its assets) to pay all the claims and expenses that are entitled to be paid on that date or will have in hand agreements from the relevant creditors entitled to such payment to be paid in an alternative fashion by mutual agreement.

**3.2.** **Ability to Make Future Plan Payments And Operate Without Further Reorganization**.

The Debtor will not be making payments over time to creditors. Rather, it will be distributing the proceeds of the sale of its assets to creditors in the order set forth above. The amount of those distributions will depend on the total amount of proceeds generated by the sale.

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. Here, the Debtor is selling all of its assets.  These funds will be used to pay all allowed Claims.

In a Chapter 7 liquidation, a trustee would be appointed and would likely hire counsel to assist in liquidating the Debtor's assets and also would charge trustee fees, which is an added cost in a chapter 7. Moreover, chapter 7 sales (with a non-operating business) historically result in values much lower than sales of operating businesses as proposed herein.

This liquidation analysis demonstrates that all Creditors will receive more pursuant to this Plan than under a Chapter 7 liquidation.  Under a Chapter 7 liquidation, the only Creditor that would be paid is the Secured Creditor, who likely would not be paid in full.

## ARTICLE 5
## DISCHARGE

**5.1.** **Discharge**.

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first three years of the Plan, or such other time not to exceed five years fixed by the Court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1. Title to Assets.

If a Plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, Equity Security Holders, and of general partners of the Debtor.

If a Plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3. Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from the implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5.** **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6.** **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items, including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within three years of the Confirmation Date, or such longer time not to exceed five years, as fixed by the Court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.** **Final Decree.**

Once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[x]    Debtor's Assets at Fair Market Value, annexed as **Exhibit A**.
[x]    Debtor's Liabilities, annexed as **Exhibit B**.
[x]    Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as **Exhibit C**.
[x]    Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as **Exhibit D**.
[x]    Liquidation Analysis, annexed as **Exhibit E**.

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to

restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The Plan is the legal document that sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization or Liquidation?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in the number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown, including that the Plan does not discriminate unfairly and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is impaired under the Plan is entitled to vote if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class? Section 2.2 C** of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote

17

will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration, and approval. The deadline by which ballots must be returned is _____. Ballots should be mailed to the following address: Law Offices of Douglas T. Tabachnik, P.C., 63 W. Main Street, Freehold, NJ 07728-2141, attn.: Douglas T. Tabachnik.

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.2 C, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

**ARTICLE 9**
**DEFINITIONS**

**9.1.**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**9.2.    Administrative Claim**: A Claim for any cost or expense of administration of the Chapter 11 Case Allowed under section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, incurred after the Petition Date, including, but not limited to: (a) any actual and necessary costs and expenses of preserving the Debtor's Estate and operating the business of the Debtor (such as wages, salaries, commissions for services); (b) compensation for legal, consulting, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 330, 331, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; (c) all fees and charges assessed against the Debtor's Estate under section 1930, chapter 123 of title 28 of the United States Code; and (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

**9.3.    Administrative Claimant**: Any person entitled to payment of an Administration Claim.

**9.4.    Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.5.    Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.6.    Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has

18

become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.7.** **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.8.** **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date, which is not secured by property of the Debtor's bankruptcy estate.

**9.9.** **Ballot:** Each of the ballot forms distributed to each Holder of an Impaired Claim in which the Holder is to indicate acceptance or rejection of the Plan.

**9.10.** **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.** **Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.** **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.** **Cash**: Cash, cash equivalents, and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.** **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Hobby Lobby Marine LLC is the Debtor-in-Possession.

**9.15.** **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.** **Class**: A category of holders of claims or interests that are substantially similar to the other claims or interests in such class.

**9.17.** **Closing Date**: The date upon which the sale of the Debtor's assets close.

**9.18.** **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.19.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.20.    Confirmation Hearing**: The hearing is to be held on May [_____], 2023 to consider confirmation of the Plan.

**9.21.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.22.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.23.    Debtor and Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case, Hobby Lobby Marine LLC.

**9.24.    Disputed Claim:** Any Claim or Equity Interest, or any portion thereof: (i) listed on the Schedules as unliquidated, disputed, or contingent; (ii) is the subject of an objection or request for estimation Filed or is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (iii) such Claim is in excess of the amount scheduled as other than disputed, contingent, or unliquidated; or (iv) is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order.

**9.25.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.26.    Effective Date**: The first business day following the closing of sale of the real property.  It is expected that the sale will close in May or June, 2023.

**9.27.    Equity Interest**: An ownership interest in the Debtor.

**9.28.    Estate**: The estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon commencement of this Chapter 11 Case

**9.29.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.30.    Final Decree:** The decree contemplated under Bankruptcy Rule 3022

**9.31.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired, and no notice of appeal has been filed.

**9.32.    Holder**: Any Entity owning or holding a Claim or Equity Interest.

**9.33.    Impaired**: When used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired withing the meaning of section 1124 of the Bankruptcy Code.

**9.34.    IRC**: The Internal Revenue Code.

**9.35.    Lien**: Any charge against or interest in property to secure payment of a debt or performance of an obligation.

**9.36.    Person**: A "person" as defined in section 101(41) of the Bankruptcy.

**9.37.    Petition Date**: November 28, 2022, the date the chapter 11 petition for relief was filed.

**9.38.    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.39.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.40.    Professional**: Any Person or other Entity that either (a) has been retained in the Chapter 11 Cases by a Final Order of the Bankruptcy Court pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise, potentially including, but not limited to: Law Offices of Douglas Tabachnik, P.C., Goldstein & McClintock, LLLP, Alvino & Shechter and Gellert Scali Busenkell & Brown, LLC; (b) seeks compensation or reimbursement of expenses in connection with these Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**9.41.    Pro Rata:** means proportionately so that with respect to an Allowed Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Allowed Claim to (ii) the amount of that particular Allowed Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to (ii) the amount of all Allowed Claims in that Class.

**9.42.    Reorganized Debtor**: The Debtor after the Effective Date.

**9.43.    Schedules**: The schedules of assets and liabilities and the statements of financial affairs filed by the Debtor in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended.

**9.44.   Secured Claim**:  (a) a Claim that is secured by a Lien on a property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) a Claim Allowed under the Plan as a Secured Claim.

**9.45.   Secured Creditor**: Any creditor that holds a Claim that is secured by the property of the Debtor.

**9.46.   Trustee**:  Alexandria Nikolinos, Esq., the Trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.47.   Unsecured Claim**:  Any Claim against the Debtor other than an Administrative Claim, a Priority Tax Claim, a Secured Claim, a Priority Claim, or an Equity Interest.

**9.48.   Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

February 17, 2023                    **HOBBY LOBBY MARINE LLC**

                                     By: */s/ Tom Tweer*
                                     Tom Tweer, Co-Managing Member